IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK VOTH,

        Plaintiff,

   v.

AMERICA'S BEST COMMUNITY
FEDERAL CREDIT UNION, et al.,

        Defendants.

Civil No. 08-1052-MO

OPINION AND ORDER

**MOSMAN, J.**,

    This dispute arises out of America's Best Community Federal Credit Union ("Credit Union") sending Frank Voth's money to the prison Central Trust where he is incarcerated. The deposited money was applied to debts Mr. Voth incurred at the correctional facility. He brought suit against Credit Union, the National Credit Union Administration ("NCUA"), Department of Consumer and Business Services ("DCBS"), and John/Jane Doe 1 through 10, alleging: (1) financial abuse; (2) negligence; (3) breach of fiduciary duty; and (4) conversion.[1] Mr. Voth

---

[1] Mr. Voth does not set out a separate claim for emotional distress, but alleges that he was "subjected to severe emotional distress." Credit Union addresses this allegation in its motion for summary judgment. There are no facts in the record supporting the contention that Mr. Voth suffered severe emotional distress and he does not respond to Credit Union's arguments as to this

PAGE 1 - OPINION AND ORDER

represents himself *pro se*.

Currently before the court are three motions: (1) DCBS's Motion to Dismiss (#5); (2) Credit Union's Motion for Summary Judgment (#9); and (3) Mr. Voth's Motion for Order to Transfer Funds (#37).  Because Mr. Voth represents himself *pro se*, the court construes his Motion for Partial Summary Judgment (#18) as a Response to Credit Union's motion for summary judgment.  For the reasons discussed below, the Motion to Dismiss (#5) is GRANTED without prejudice, Credit Union's Motion for Summary Judgment (#9) is GRANTED, and Mr. Voth's Motion for Order to Transfer Funds (#37) is DENIED.

## BACKGROUND

The following facts are not in dispute between the parties.  Mr. Voth is incarcerated at the Oregon Two Rivers Correctional Institution. (Third Am. Compl. (#1) ¶ 1.)  In 2006, Mr. Voth opened an Incarcerated Member Account with Credit Union. (Bethmann Decl. (#12) ¶ 2, Exs. 1-2.)  The account agreement provided that funds from a member account could only be sent to the Central Trust of the correctional institution where the inmate is housed.  (*Id*. at Ex. 2.)  The account policies explicitly prohibit Credit Union from sending funds to third parties.  (*Id*.)

In March 2007, Credit Union refused Mr. Voth's request to send funds to a third party, and provided him with a copy of the policies that specified that funds could only be sent to the Central Trust.  (*Id*. ¶ 3, Ex. 3.)  In June 2007, Mr. Voth again requested Credit Union to send funds to a third party, attorney Marianne Dugan.  (*Id*. ¶ 4, Ex. 4.)  Credit Union denied his request, and instead send the request $2,500 to the prison Central Trust.  (*Id*.)  When Mr. Voth

---

"claim."  The court therefore construes this allegation as part of Mr. Voth's request for damages and not as a separate cause of action.

PAGE 2 - OPINION AND ORDER

sought to withdraw his funds from the Central Trust account, he was informed that the deposited money was used to pay his Oregon Department of Corrections and prison "canteen" debts. (*Id*. ¶ 5.)

In October 2007, Mr. Voth filed suit against Credit Union in Umatilla County Circuit Court.[2] Mr. Voth amended his complaint to include additional parties, including the National Credit Union Administration. NCUA removed the case to federal court in September 2008.

## DISCUSSION

### I.     DCBS's Eleventh Amendment Immunity

DCBS argues that as a state agency, it is immune from suit because it has not waived its Eleventh Amendment sovereign immunity. Mr. Voth did not respond to DCBS's argument, or otherwise provide the court with information regarding a waiver of the state agency's sovereign immunity.

The Eleventh Amendment bars state law claims from being brought in federal court if the state has not waived its immunity from suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). However, "[a] state may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity." *Hill v. Blind Indus. and Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999) (citations omitted). Such a waiver "must unequivocally evidence the state's intention to subject itself to the jurisdiction of the federal court." *Id*. A state may waive its immunity by invoking federal court jurisdiction, *Coll. Sav.*

---

[2] Credit Union indicates in its summary judgment briefing that it filed a counterclaim under Oregon Revised Statutes 20.105(1) for reasonable attorney fees. However, the counterclaim was not submitted to this court when the matter was removed, and is therefore not properly before the court.

PAGE 3 - OPINION AND ORDER

*Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999), or "voluntarily appearing and defending on the merits," *Hill*, 179 F.3d at 759. *See also Biberdorf v. Oregon*, 2002 WL 31455734, at *3 (D. Or. Feb. 6, 2002) (holding that the State's consent to removal and subsequent litigation on the merits constituted an unequivocal waiver of immunity); *Riley v. Oregon*, 2004 WL 2360511, at *2 (D. Or. Oct. 19, 2004) (holding that sovereign immunity was not waived where the State neither removed, nor consented and then engaged in significant litigation before asserting its immunity).

Here, the record before the court is not clear as to when DCBS was served by Mr. Voth in relation to when the matter was removed. Thus, the court cannot determine whether DCBS consented to the removal by not objecting and allowing the case to be removed. What is apparent is that DCBS did not invoke federal court jurisdiction as this case was removed by NCUA. Additionally, DCBS filed its motion to dismiss based on Eleventh Amendment immunity shortly after the case was removed and has not sought to litigate the merits of the matter first. As such, I find that DCBS has not engaged in conduct waiving its sovereign immunity and dismissal is appropriate. Because I grant the motion to dismiss based on sovereign immunity, I do not reach the merits of DCBS's argument that the plaintiff failed to state claim under Federal Rule of Civil Procedure 12(b)(6). I therefore dismiss without prejudice the claims against DCBS.

## II.     Credit Union's Motion for Summary Judgment

### A.     *Summary Judgment Standard*

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

PAGE 4 - OPINION AND ORDER

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue of fact exists for trial, the non-moving party cannot then rest on the pleadings but must respond with evidence setting out "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party has the "burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial.' . . . It is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B. *Summary Judgment is Appropriate for Mr. Voth's Claims*

#### 1. **Financial Abuse Claim**

Oregon Revised Statute ("ORS") section 124.110 provides a cause of action for financial abuse of a vulnerable person in the following circumstances:

> (a) When a person wrongfully takes or appropriates money or property of a vulnerable person . . . .
>
> (b) When a vulnerable person requests that another person transfer to the vulnerable person any money or property that the other person holds or controls and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good cause, either continues to hold the money or property or fails to take reasonable steps to make the money or property readily available to the vulnerable person when:
>
>> (A) The ownership or control of the money or property was acquired in

> whole or in part by the other person or someone acting in concert with the other person from the vulnerable person; and
>
> (B) The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person.

Or. Rev. Stat. § 124.110(1)(a)-(b).

Credit Union assumes for the purposes of argument that Mr. Voth is a "financially incapable vulnerable person" but contends that Mr. Voth does not make a prima facie case showing that it violated the statute. (Def.'s Memo. (#10) 5.) I agree.

There are no facts here to support the allegation that Credit Union took or appropriated Mr. Voth's money, as required by ORS § 124.110(1)(a). Credit Union sent Mr. Voth's money to him directly at his prison account, in accordance with the account policies. After depositing the funds into Mr. Voth's Central Trust account, Credit Union had no involvement with the money and was not responsible for its distribution.

Further, there are no facts before the court to support the claim that under Oregon Revised Statute § 124.110(2), Credit Union refused to transfer funds to Mr. Voth, without good cause. Credit Union did not deny Mr. Voth his property, and indeed sent the money directly to him. Additionally, there is no evidence in the record that Credit Union acted with bad faith by sending the money to Mr. Voth. In short, Credit Union did not hold Mr. Voth's funds, fail to take reasonable steps to make his property available to him, or act in bad faith. For these reasons, summary judgment is appropriate on this claim.

### 2. Negligence Claim

Mr. Voth alleges that Credit Union had duty to prevent injury to his interests, and that its conduct was unreasonable in withdrawing the money from his account and sending it to the prison Central Trust without his authorization. The fact that Credit Union sent Mr. Voth his funds directly is insufficient to establish a prima facie case of negligence under Oregon law.

Whether a party will be liable for negligence under Oregon law depends on whether the "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland Sch. Dist.*, 734 P.2d 1326, 1336 (Or. 1987). "Not all negligently inflicted harms give rise to a negligence claim." *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 184 (Or. 2008) (citing *Hammond v. Cent. Lane Commc'ns Ctr.*, 816 P.2d 593, 596 (Or. 1991)). Rather, a plaintiff must suffer harm "to an interest of a kind that the law protects against negligent invasion." *Solberg v. Johnson*, 760 P.2d 867, 870 (Or. 1988). "In the negligence context, . . . 'harm' generally refers to *physical* injury." *Lowe v. Philip Morris USA, Inc.*, 142 P.3d 1079, 1086 (Or. Ct. App. 2006) *aff'd*, 183 P.3d 181 (citing *Branch v. Hensgen*, 752 P.2d 1275, 1277 (Or. Ct. App. 1988)).

Here, there was no foreseeable risk of harm. Credit Union sent Mr. Voth his money to the only location it was contractually allowed to distribute funds, the prison Central Trust account. There are no facts in the record indicating that Credit Union knew that once received, the funds would be used to pay Mr. Voth's prison debts. As such, there was no way for Credit Union to know that Mr. Voth would not be able to distribute his funds in the manner that he chose. To the extent that Mr. Voth alleges harm because he could not pay for his pending lawsuits, Credit Union had no way to know that such suits existed, or that Mr. Voth would not be able to pay for them. Therefore, Mr. Voth's claimed harms were not foreseeable to Credit Union.

PAGE 7 - OPINION AND ORDER

Moreover, Mr. Voth has cited no authority supporting the proposition that these alleged harms are the type that "the law protects against negligent invasion." *See Solberg*, 760 P.2d at 870. For these reasons, summary judgment is appropriate as to the negligence claim.

### 3. Breach of Fiduciary Duty Claim

Mr. Voth alleges that he and Credit Union were in a "special relationship" and that Credit Union breached its fiduciary duty to him. (Third Am. Compl. (#1) ¶ 38.) I disagree. Whether a special duty is owed is a question of law. *SFG Income Fund, LP v. May*, 75 P.3d 470, 475 (Or. Ct. App. 2003) (citing *Conway v. Pac. Univ.*, 924 P.2d 818, 823 (Or. 1996). Under Oregon law, there is no heightened duty of care between a bank and a depositor. *Stevens v. First Interstate Bank of Cal.*, 999 P.2d 551, 554-55 (Or. Ct. App. 2000) (rejecting the argument that a "depositor-bank relationship" gives rise to a heightened duty beyond common law foreseeability). Mr. Voth cites no legal standard to support his claim that Credit Union owed him a fiduciary duty. Because Credit Union did not owe Mr. Voth a special duty, it cannot be found to have breached this duty and this claim fails as a matter of law.

### 4. Conversion Claim

Under Oregon law, conversion is "the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Emmert v. No Problem Harry, Inc.*, 192 P.3d 844, 850 (Or. Ct. App. 2008) (citing *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969)). "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 739 P.2d 1051, 1052 (Or. Ct. App. 1987) (citing *Lee v. Wood Prods. Credit Union*, 551 P.2d 446 (Or. 1976)).

PAGE 8 - OPINION AND ORDER

Here, there is no evidence in the record that Credit Union intended to control Mr. Voth's money such that it interfered with his rights to it. Mr. Voth deposited his money willingly with Credit Union. Credit Union subsequently sent Mr. Voth his money directly, at the prison Central Trust, which by contract was the only location where the money could be sent. Additionally, there is no evidence that Credit Union did anything to interfere with Mr. Voth's right to the money. Credit Union had no control over the money once it was sent to the prison Central Trust, and had no control over whether or not it was distributed to Mr. Voth. Therefore, because there is no evidence of an intent to interfere with Mr. Voth's property, nor facts showing that Credit Union interfered with his right to the money, summary judgment is appropriate as to this claim.

### III.   Motion for Order to Transfer Funds

Mr. Voth filed a Motion for Order to Transfer Funds (#37), requesting that the court order Credit Union to transfer $350 from his account to pay the filing fee for this case. Credit Union responds that Judge Reynolds of the Umatilla County Circuit Court denied Mr. Voth's previous motion to compel Credit Union to continue servicing his account. (Def.'s Resp. (#39) 1; Parnell Decl. (#27) ¶ 4.) When offered the choice of having all his funds transferred to the Central Trust or having a hold placed on his account, Mr. Voth chose the latter. (*Id*.) This court has neither jurisdiction to review Judge Reynolds's order, nor control over the payment of filing fees for Oregon state court. This matter was removed to federal court by NCUA and Mr. Voth is not required to pay this court's fees. Therefore, Mr. Voth's order is denied.

### CONCLUSION

Based on the foregoing, I GRANT DCBS's Motion to Dismiss (#5) without prejudice, GRANT Credit Union's Motion for Summary Judgment (#9), and DENY Mr. Voth's Motion for Order to Transfer Funds (#37).

IT IS SO ORDERED.

DATED this  15th  day of April, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 10 - OPINION AND ORDER